IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD E.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 367 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| ANDREW SAUL, Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Leonard E.'s application for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment, [Dkt. 19, Pl.'s Mot.], is GRANTED.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been substituted for his predecessor.

**BACKGROUND**

I.     **Procedural History**

On September 4, 2015, Plaintiff filed a claim for SSI, alleging disability since January 19, 1997, due to a head injury, diabetes, breathing problems, sarcoidosis, bipolar disorder, schizophrenia, and an inability to get along with others. [Dkt. 16-1, R. at 188, 222, 236.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 28, 2017. [R. 31.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 31–67.] Vocational expert ("VE") Glee Ann L. Kehr also testified. [R. 68–74.] On October 10, 2017, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 15–23.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

II.     **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 15–23.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of September 4, 2015. At step two, the ALJ concluded that Plaintiff had the following severe impairments: "asthma, degenerative disc disease of the lumbar spine, diabetes mellitus, and organic mental disorder, status post trauma to the head." [R. 17.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). Before step four, the

ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: he should not climb ladders, ropes, and scaffolds; only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; avoid concentrated exposure to pulmonary irritants and poorly ventilated areas; only perform simple, routine, and repetitive tasks; and only occasionally interact with the public, co-workers, and supervisors. At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as an industrial cleaner as he actually performed it. In the alternative, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 22–23.]

**DISCUSSION**

**I.      Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at

either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to

permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II.     Analysis**

Plaintiff makes a number of arguments challenging the ALJ's decision, including: (1) the ALJ should have taken into account his prior period of receiving disability benefits; (2) the ALJ erred by not considering his bipolar disorder, major depressive disorder with psychotic features, and schizophrenia in determining whether his mental impairments met or equaled a Listing and should have obtained a medical consultant to render an opinion on this issue; (3) the mental RFC was erroneous because it did not account for his moderate limitation in concentration, persistence, and pace ("CPP") and the ALJ erred in weighing the medical opinions; (4) the physical RFC was lacking because it failed to account for all of Plaintiff's conditions and physical limitations; (5) the ALJ erroneously discounted Plaintiff's statements about his symptoms because of the course of treatment; and (6) the ALJ did not sufficiently question the VE about whether Plaintiff could perform his past work and did not include all of the RFC limitations in the questions posed to the VE. [Dkt. 20, Pl.'s Br.] After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ erred in evaluating his mental limitations, specifically by failing to incorporate Plaintiff's moderate CPP limitations into the RFC and the questions posed to the VE and to adequately consider the opinion of the treating nurse. Because these failures alone warrant remand, the Court does not reach Plaintiff's additional arguments.

First, the ALJ erred by failing to incorporate the moderate limitation regarding concentration, persistence, and pace that the ALJ imposed into the resulting RFC and the questions to the VE. As the Seventh Circuit has made clear, "'both the hypothetical posed to the

5

VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)); *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010). Generally, catch-all terms like the ones the ALJ used here—limiting Plaintiff to "simple, routine and repetitive tasks," [R. 19]—are inadequate "because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump*, 932 F.3d at 570. Specifically, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id.*; *see Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

Here, despite the ALJ recognizing that Plaintiff would have moderate difficulty with concentration, the RFC limiting Plaintiff to simple tasks did not address any limitations in concentration over an extended period of time. The government argues that the ALJ's crafting of the RFC to include "simple, routine and repetitive tasks" effectively translated the agency physicians' opinions into the RFC. [Dkt. 25, Gov't's Br., at 10–11.] But this overlooks that, although both physicians concluded that Plaintiff could perform unskilled work with limited social demands, they also opined that Plaintiff would at least have "mild limitations in his ability to maintain concentration for extended periods," [R. 84–5, 101–02], and that limiting him to unskilled work did not account for these limitations, *see Martin*, 950 F.3d at 373. Rather than tailor the RFC to fit the limitations supported by the record, the ALJ erred by instead relying on a shorthand phrase in the RFC and in questions to the VE that did not fully encompass Plaintiff's mental limitations. *Crump*, 932 F.3d at 571.

6

Next, the ALJ's explanation of his decision to give no weight to a treating nurse's medical opinion concerning Plaintiff's mental limitations lacks a "logical bridge" to the conclusion. *Beardsley*, 758 F.3d at 837. The ALJ gave great weight to the agency physicians' opinions and assigned no weight to the April 2017 statement of Heidi Napolitano, "a registered nurse [who noted] extreme mental limitations" because Napolitano was "not an acceptable medical source and [the statement was] not supported by or consistent with any objective medical evidence in the file." [R. 22.] Although the ALJ correctly explained that under the regulations[3] Napolitano was not an "acceptable medical source,"[4] her opinion could still be considered under the standard factors for assessing a medical opinion: the length, nature, and extent of the treatment relationship; the frequency of examination; the consistency and supportability of the source's opinion; and the source's specialty. 20 C.F.R. §§ 404.1527(c), 416.927(f)(1). Indeed, "an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source." 20 C.F.R. § 416.927(f)(1). The ALJ needed to adequately explain his decision not to grant any weight to Napolitano's decision, 20 C.F.R. § 416.927(f)(2), but did not do so here.

The only factor that the ALJ relied on in assigning Napolitano's opinion "no weight" was that it was not supported by the record, but that unexplained reason is seemingly contradicted itself by the record. In his discussion of the medical evidence, the ALJ relied on a "mini mental status examination" in October 2015, during which Plaintiff had a normal exam and showed no

---

[3] As of March 27, 2017, the regulations for evaluating opinion evidence have been substantially revised. Because Plaintiff's application was filed prior to March 2017, his claims are evaluated under the previous regulations.

[4] Acceptable medical sources are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).

7

signs of cognitive difficulties or "depression, agitation, irritability, or anxiety," and a December 2015 psychological consultative exam that revealed Plaintiff had difficulty with memory and an I.Q. in the "mild to moderate mentally handicapped range." [R. 20.] Additionally, the ALJ cited two mental health treatment records, both from Napolitano's office: a January 2017 note that Plaintiff's hallucinations had decreased, he had no suspicion or paranoia, he was more alert, and his depression had improved, and a March 2017 note that his depressive symptoms were mild. [R. 21.]

But the earlier mental health records are more mixed and arguably support Napolitano's opinions that Plaintiff would have thinking disturbances, difficulty concentrating, and mood disturbances, among others, that would make it difficult in many respects for him to perform work tasks. [R. 808–10, 820.] For example, in November 2016, even after resuming medications, Plaintiff was still depressed and hearing some voices, and Napolitano noted that he was irritable, paranoid, and had a poor attention span. [R. 631–32.] The following month, Plaintiff was similarly depressed, irritable, and inattentive. [R. 633–34.] Because the ALJ did not address these records—the only ones from the relevant time period from providers who were treating Plaintiff—or otherwise explain why Napolitano's opinion was unsupported, the Court concludes that the ALJ failed to build a "logical bridge" to his conclusion that Napolitano's opinion deserved no weight. *Beardsley*, 758 F.3d at 837.

Because the ALJ did not adequately account for Plaintiff's mental limitations in crafting the RFC and his questions to the VE and failed to build a "logical bridge" in his weighing of the medical opinions in this case, the Court determines that remand is appropriate.

8

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [R. 19] is GRANTED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

Date: December 8, 2020

BETH W. JANTZ
United States Magistrate Judge

9